UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re CINTAS CORP. OVERTIME PAY ARBITRATION LITIGATION, | Case No: C 06-1781 SBA<br><br>**ORDER DENYING CINTAS' MOTION FOR INJUNCTION**<br><br>[Docket 68] |

The parties are presently before the Court on the Motion By Petitioner Cintas Corporation for Injunction Against Arbitration of Each of the Respondent's Claims in the Northern District of California or Any Place Other Than Within the District in Which Cintas' Petition Under Section 4 of The Federal Arbitration Act Was Filed as to Each Respondent ("Motion for Injunction"). (Docket 68.) In its motion, Cintas seeks to enjoin the arbitration in Paul Veliz v. Cintas Corp., C 03-01180 RS (SBA), which is pending in this District *as well as* any other arbitration that is not commenced in any of the 70 federal districts in which Cintas has separately filed a motion to compel arbitration. Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

**I.    BACKGROUND**

   **A.   PROCEDURAL HISTORY**

On March 19, 2003, various Service Sales Representatives ("SSR") employed by Cintas filed suit against the company alleging that they were misclassified as "exempt" employees in violation of the Fair Labor Standards Act of 1938 ("FLSA"). See Paul Veliz v. Cintas Corp., C 03-01180 RS (SBA) ("the Veliz action"). The suit is styled as a collective action under the FLSA, and

as a class action under the laws of various states.[1] On motion of Cintas, the Court ordered most of the plaintiffs to submit their claims to arbitration under the terms of their Employment Agreements. (C 03-1180 RS, Docket 140.) Thereafter, the Court directed that notice of the action be given to potential claimants, along with information on how to complete and return a consent form to "opt-in" to the action. (Id., Docket 159.) Around 2,400 claimants submitted consent forms. Cintas then filed a motion to stay the litigation as to approximately 1,900 of these opt-in plaintiffs until they arbitrated their disputes. The Court granted the motion. (Id., Docket 516.)

Shortly after obtaining a favorable ruling on its motion to stay, Cintas filed 70 separate petitions to compel arbitration in every federal district court throughout the United States where at least one of the 1,900 opt-in plaintiffs was employed. Each of the Respondents against whom Cintas filed a petition is also a Plaintiff in the Veliz action. In turn, Respondents filed a motion before the Judicial Panel on Multidistrict Litigation ("MDL Panel") to transfer the petitions to this Court for coordinated proceedings. On August 18, 2006, the MDL Panel, over Cintas' objection, issued a Transfer Order which transferred the 70 actions to this Court under MDL-1782.

The MDL Transfer Order indicated that "[r]esolution of the actions in this docket will require each of the 70 district courts where Cintas has brought suit to construe identical contractual arbitration clauses to determine i) whether the parties named in each motion to compel are refusing to arbitrate within the meaning of § 4 of the Federal Arbitration Act, and/or ii) whether the parties are complying with that obligation by seeking to arbitrate collectively in an arbitration proceeding already occurring in the Northern District of California...." (Docket 1 at 1-2.) Following briefing by the parties, on January 12, 2007, the Court issued a Suggestion of Remand Order ("Remand Order") in which it concluded that the Respondents were "refusing to arbitrate" by virtue of their decision to opt-in to the collective action instead of pursuing their claims individually through

---

[1] Federal wage claims cannot be filed as a class action under Rule 23, and instead, must be maintained as a "collective action." 29 U.S.C. § 216(b). "A 'collective action' differs from a class action." McElmurry v. U.S. Bank Nat. Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007). In a class action brought under Rule 23, all members of a certified class are bound by the judgment unless they opt-*out* of the suit. Id. In contrast, in a collective action under the FLSA, 29 U.S.C. § 216(b), only those claimants whose affirmatively opt-*in* by providing a written consent are bound by the results of the action. Id.

arbitration. (Id., Docket 52 at 6, 10.) Given this conclusion, the Court Order recommended that the MDL panel remand the cases to the transferor courts. (Id., Docket 26.)[2]

On January 17, 2007, Respondents filed a motion to certify the Court's January 12, 2007 Remand Order for interlocutory appeal under 28 U.S.C. § 1292(b), and to stay the action pending appeal. On May 5, 2007, this Court granted the motion and certified the question of whether the Court has subject matter jurisdiction over the MDL cases. (Docket 57.) The issues presented on appeal are whether a stand-alone petition under section 4 of the FAA borrows subject matter jurisdiction from the underlying dispute, and whether Cintas has standing as a party "aggrieved by" Respondent's "refusal to arbitrate." (Id. at 4-5.) The Court thus stayed its Remand Order pending resolution of the appeal by the Ninth Circuit.

On April 7, 2008, following the close of briefing and after oral argument on the appeal, the Ninth Circuit vacated the submission of Respondents' interlocutory appeal, pending the Supreme Court's resolution of Vaden v. Discover Bank, 129 S.Ct. 1262 (2009). On March 9, 2009, the Supreme Court rendered its opinion in Vaden and held that a federal court may "look through" a petition to compel arbitration and examine the parties' underlying dispute to determine whether federal subject matter jurisdiction is present. Id. at 1268. The parties subsequently submitted supplemental briefing to the Ninth Circuit regarding their respective positions on how Vaden affected the issues on appeal. As to the secondary issue of whether Respondents could be deemed to have refused to arbitrate, the parties have disputed whether that issue should be decided by the appellate panel. Both have agreed, however, that such decision should be made by the Ninth Circuit. (See Opp'n at 4.)

### B. MOTION BEFORE THE COURT

On April 2, 2009, Cintas filed the instant motion, in which it seeks to enjoin the arbitration in the Veliz action from proceeding further. In addition, Cintas seeks an injunction to preclude any arbitration "not commenced in the respective Respondent's Districts among the 70 Districts in

---

[2] On April 12, 2007, the Court issued an Amended Suggestion of Remand to indicate that the Arbitrator had concluded that 102 plaintiffs, not 56, were properly before him. (Docket 30, 52.)

which Cintas' FAA Section 4 petitions were filed." (Docket 68 at 1.) In essence, Cintas' position is that no arbitration can proceed against it in any forum other than those in which Cintas filed a motion to compel arbitration.[3] Respondents oppose the motion on the ground that the pendency of the interlocutory appeal divests this Court of jurisdiction to hear the instant motion. Alternatively, Respondents contend that even if jurisdiction were present, Cintas has failed to meet its burden of demonstrating a likelihood of success and irreparable harm.

## II. DISCUSSION

### A. JURISDICTION

It is well settled that the filing of a notice of appeal divests the district court of jurisdiction with respect to all matters involved in the appeal. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam); City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 886 (9th Cir. 2001) ("the filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal."); Bermudez v. Duenas, 936 F.2d 1064, 1068 (9th Cir. 1991) (district court properly refused to consider motions relating to issues that were on appeal).

Cintas argues that notwithstanding the pending appeal, the Court retains jurisdiction to enter an injunction to preserve the status quo. (Reply at 3-4.) As a general proposition, Cintas is correct. See Natural Resources Defense Council Inc. v. Southwest Marine Inc., 242 F.3d 1163, 1166 (9th Cir. 2001) ("The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo."). Nevertheless, that principle has no application here because the injunction sought by Cintas would alter, not preserve, the status quo.

There is no dispute that the arbitration in the Veliz action has been proceeding (albeit slowly) since 2004. Recently, the Arbitrator, acting under the imprimatur of the Ninth Circuit's

---

[3] Cintas does not specify the duration of the proposed injunction. Based on the arguments presented in its papers, however, it appears that Cintas seeks an injunction until the Ninth Circuit resolves the interlocutory appeal filed by Respondents. The Court thus construes Cintas' motion as one seeking a preliminary injunction.

mandate to interpret the arbitration agreements, concluded that Cintas' arbitration agreements permit collective and class arbitration. He also found that the 1,900 opt-in plaintiffs (which include the Respondents herein) may participate in the ongoing <u>Veliz</u> arbitration without running afoul of the place-of-arbitration provision. Thus, far from preserving status quo, the proposed injunction would alter it by halting an arbitration that already is well under way. See <u>522 W. 38th St. N.Y. LLC v. New York Hotel & Motel Trades Council</u>, 517 F. Supp. 2d 687, 688 n.1 (S.D.N.Y. 2007) ("granting an injunction would in effect disrupt the arbitration and alter the status quo, making the injunction now sought in this case akin to a mandatory injunction, which courts are reluctant to grant."). The Court concludes that it lacks jurisdiction to enjoin the ongoing <u>Veliz</u> arbitration. However, even if jurisdiction were present, the Court finds, for the reasons set forth in the following section, that the motion should be denied on the merits.

### B. INJUNCTIVE RELIEF

#### 1. Legal Standard

There are two tests applicable to a preliminary injunction. "Under the 'traditional' criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." See <u>Natural Res. Def. Council, Inc. v. Winter</u>, 518 F.3d 658, 677 (9th Cir. 2008) (citation and internal quotations omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." <u>In re Excel Innovations, Inc.</u>, 502 F.3d 1086, 1092 (9th Cir. 2007). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis in original).

### 2. Likelihood of Success

Cintas contends that it is likely to succeed on appeal with respect to its argument that this Court correctly concluded in its Remand Order that the Respondents have failed, neglected or refused to arbitrate. As noted, the Court made that determination on the ground that Respondents were attempting to opt-in to the Veliz action instead of pursuing arbitration in the District in which they are employed. (Remand Order at 6, 8.) In reaching that conclusion, the Court relied on the fact that the Arbitrator had previously ruled that the 1,900 opt-in plaintiffs could not become parties to the arbitration being conducted in this District. (Id. at 9.)

The fundamental flaw in Cintas' argument is that it ignores the significant changes in the landscape of this and the Veliz action in the two years since the Court issued its Remand Order. Most notably, the Ninth Circuit vacated this Court's rulings concerning the Arbitrator's Clause Construction Award and held that it was the province of the Arbitrator to decide "whether the plaintiffs have the ability to proceed on a class or collective basis." See Veliz v. Cintas Corp., 2008 WL 1696949 (9th Cir. April 8, 2008) at *1. The court of appeal also instructed that the arbitrator should make that determination without affording any deference to this Court's previously-articulated opinions on those issues. Id.

In accordance with the Ninth Circuit's mandate, the Arbitrator issued a revised Clause Construction Award on December 11, 2008, in which he concluded that collective and class arbitrations are permitted under the arbitration agreements, and that the 1,900 opt-in plaintiffs "may opt-in to this arbitration." (See Clause Construction Award, Dec. 11, 2008, at 10 n.7.)[4] In consideration of the Ninth Circuit's ruling and the Arbitrator's subsequent, revised Clause Construction Award, the Court has serious doubts as to whether the court of appeal would agree with Cintas that Respondents' participation in those ongoing arbitration proceedings—which the Arbitrator has since ruled is permissible—constitutes a "refusal to arbitrate."[5]

---

[4] The Court takes judicial notice of the Clause Construction Award, which was submitted in the Veliz action as an exhibit in connection with various motions concerning that award. (See C-03-1180 RS (SBA), Docket 1228.)

[5] Cintas also has not provided any legal authority demonstrating that this Court has the power to enjoin an arbitration taking place outside this jurisdiction.

- 6 -

For its part, Cintas entirely ignores the import of the Ninth Circuit's ruling in the <u>Veliz</u> action and instead focuses on the Supreme Court's recent decision in <u>Vaden v. Discover Bank</u>, 129 S.Ct. 1262, 1268 (2009) in which it held that a federal court may "look through" a petition to compel arbitration and examine the parties' underlying dispute to determine whether federal subject matter jurisdiction is present. However, other than citing <u>Vaden</u>, Cintas does not explain precisely how <u>Vaden</u> supports its likelihood of success on appeal. Moreover, Cintas never confronts the fact that the Arbitrator was vested with full authority to decide whether collective or class arbitration is permitted under the arbitrations agreements, and his subsequent Clause Construction Award issued on December 11, 2008, in which he ruled that they do. Having failed to address the interplay between those decisions and issues on appeal, Cintas has not carried its burden of making a "clear showing" that it is likely to succeed on appeal.

### 3. Irreparable Harm

Nor is the Court convinced that Cintas will suffer irreparable injury absent an immediate injunction. In the <u>Veliz</u> action, the Arbitrator has settled the issues regarding which parties are before him and the scope of the arbitration. His Clause Construction Award issued on December 11, 2008 indicates that the next step in the arbitration is to resolve the question of class certification. (<u>See</u> Docket 1228, C-03-1180 RS, Goldsmith Decl. Ex. 2 at 8.) As such, Respondents' participation in the arbitration will have little practical impact on Cintas, since they are proceeding on a class or collective, not an individual, basis. In the event that Cintas prevails on appeal and the Respondents' MDL cases are remanded to the transferor courts, Cintas will suffer little, if any, prejudice, given that there will have been no individual adjudication of any Respondent's claims. Moreover, any additional cost resulting from the Respondents' involvement in the pending arbitration, as a matter of law, does not constitute irreparable harm. <u>See</u> <u>Graphic Comms. Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v. Chicago Tribune Co.</u>, 779 F.2d 13 (7th Cir. 1986) (cost of arbitration resulting from denial of stay of arbitration "does not show irreparable harm").

The cases cited by Cintas for the notion that it will suffer irreparable harm absent a stay are readily distinguishable. (Reply at 7.) Each of those cases involved situations where a party was

required to arbitrate a dispute when, in fact, there was no agreement to do so. That situation is not presented here, where Cintas agreed (and indeed sought) to have Respondents' claims arbitrated. Cintas purports to quote <u>Textile Unlimited, Inc. v. A..BMH and Co., Inc.</u>, 240 F.3d 781, 787 (9th Cir. 2001) as stating that a party will suffer irreparable harm if it is compelled to arbitrate in a place other than as provided for in the arbitration agreement. <u>Textile Unlimited</u> does not stand for that proposition. Like the other cases, <u>Textile Unlimited</u> involved a situation where the party had not actually agreed to be bound by an arbitration clause. In short, Cintas' claim of irreparable harm is unsupported, both factually and legally.

### 4. Public Interest

Finally, the Court concurs with Respondents that the public interest militates against staying the arbitration. "A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" <u>Preston v. Ferrer</u>, 128 S.Ct. 978, 986 (2008); <u>accord</u> <u>Bushley v. Credit Suisse First Boston</u>, 360 F.3d 1149, 1153 (9th Cir. 2004) ("The Federal Arbitration Act represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'") (citations omitted). It is for these reasons that stays of arbitration are disfavored. <u>See</u> <u>In re Piper Funds, Inc.</u>, 71 F.3d 298, 302 (8th Cir. 1995).

In contravention to these policies, Cintas' proposed injunction will engender further expense and delay. The <u>Veliz</u> case was filed in March 2003 and the Court granted *Cintas*' motion to compel arbitration in April 2004. Imposing a stay of the arbitration would serve only to delay conclusion of the dispute further, which is antithetical to the spirit and intent of the arbitration process. In addition, staying the arbitration in the <u>Veliz</u> action would inappropriately usurp the authority of the Arbitrator and ostensibly would be contrary to the Ninth Circuit's decision in that case. In sum, public policy favors allowing the arbitration proceedings in the <u>Veliz</u> action to proceed forward.

**III. CONCLUSION**

The Court concludes that it lacks jurisdiction to consider Cintas' Motion for Injunction. Alternatively, even if it had jurisdiction, the Court finds that Cintas has failed to clearly establish a likelihood of success and irreparable injury, or that public policy favors the requested injunction. For the reasons stated above,

IT IS HEREBY ORDERED THAT Cintas' Motion for Injunction (Docket 68) is DENIED.

IT IS SO ORDERED.

Dated: June 19, 2009

Hon. Saundra Brown Armstrong
United States District Judge